Mr. Pajon and I represent Roy Shannon, who is appealing from a conviction and sentence from the District Court. I want to concentrate my argument today on the sentencing issue. The reasonable doubt issue, I want to stand on the brief, is, Your Honors, I believe are where the ineffective assistance of counsel claim has been withdrawn so that Mr. Shannon can pursue it under 2255. On page 33, I'm sorry, 31, I believe, of the government's brief, the, I'm sorry, I'm not sure where, it is 32. The government says that the District Court held the defendant was a supervisor, not a leader or organizer. I'd phrase it a little differently. What the District Court actually said was Mr. Shannon was a supervisor or a boss. He used both words. He didn't really distinguish between them. And given that it's the small size of the organization and you have the same guideline provision that applies, technically it doesn't really matter whether he's a supervisor, manager, or whether he's an organizer, leader. It comes under the same two-point enhancement. But for purposes of thinking through just what was going on, I'd like to make a couple of suggestions on that. In a very tiny, essentially non-hierarchical organization like the one that you've got involved in this case, three guys trying to figure out how to make some money together and kind of feeling their way, there isn't really any room for a mid-level supervisor the kind you traditionally think of as a manager. That doesn't mean that you couldn't conceive of some kind of a managerial role. But basically, somebody with a leadership role in an organization of this nature almost has to be kind of an organizer or one of the troops. So I would suggest that the application note for considerations that everybody agrees apply to a leader or manager. Something that Mr. Shannon would have to meet in order for the court's finding to be upheld. But then when we look at the facts here, we have Shannon who recruited Taylor, got the laptop with the identities loaded on it, gave it to Taylor. He was the one that was responsible for dividing up the money, at least the $3,000. He often checked in with Taylor to make sure things were moving along and where things were, and he repeatedly threatened Taylor when he didn't meet his expectation. He did recruit Taylor, I give you that, and that counts towards the enhancement. No question about that. As far as... What about the other four things? I'm trying to recall. I see him having the laptop, this is something the laptop, he and Williams apparently worked out together. He and Williams got the names from somewhere. He's a participant. The only time that he really came down on Taylor... I guess what I'm saying is those points that I made, those were undisputed, correct? No, Your Honor. You have the issue of the credibility of the witnesses. They are disputed, Your Honor. They are disputed. I think Mr. Taylor's testimony... Certainly the government provided evidence of that to support all of those things. Mr. Taylor's testimony, and we're talking about pages I think 139 through 149 of the record, was very clear about two things. One is that the nature of the crime, the nature of the scheme they were going to do, evolved by discussion and consensus among the three of them. But the jury had to make the determination. Actually, it was a bench trial, Your Honor. It was a bench trial. Yeah, the court had to make it, I'm sorry, had to make that determination. I don't think that aspect was disputed. Taylor was the government witness. He said, we all worked this out between us. As far as the split of proceeds, again, I think Taylor's testimony, and I think this is at page 149, again, the government's witness, he said we all agreed among the three of us that it was going to be an equal split. Yes, the recruitment is a factor that counts in favor. The decision about the proceeds, the determination of what the offense would be, these were consensus decisions. As far as the roles and the offense, they pretty much evolved because of what the people were. Taylor was an IT, I'm sorry, Williams was a computer expert. Taylor was a tax expert. They pooled their resources. You had two specialists, and Shannon was a generalist. Shannon kind of went between them. There are cases in which I think it's correct to say, as the government pointed out, that a coordinator is a manager. I think in many cases that's true, particularly in a larger organization. In this case, no. In this case, you've got three equal members, and Mr. Shannon is doing what the others didn't do. As far as the point about Mr. Shannon coming down on Taylor, that he did, but he did it not in a managerial role. He did it because he thought that one of his buddies was cheating him and holding out on him. So that's why he threatened him, repeatedly threatened him. Absolutely. He thought that one of the gangs was stealing more than his share, and that was one gangster getting angry with another. It wasn't a manager or a boss executing control. I'm inclined to want to save the rest of my time for rebuttal. I'll be happy to address any questions that the court may have at this point. Certainly, Mr. Sacks. I'm sorry. Certainly. Thank you. Mr. Novak. May it please the Court, my name is William Novak, and I represent the United States. Your Honor, in sentencing, the District Court properly applied the two-level leadership enhancement to Mr. Shannon's guidelines calculation. The same evidence that amply supported his conviction clearly showed that he was not a mere participant in this group, but that he held a supervisory role in this small group. The District Court correctly characterized Mr. Shannon as a laid-back boss, but despite being laid-back, the evidence showed that he was still the boss. The evidence showed that Mr. Shannon recruited Mr. Taylor, that he directed Mr. Taylor and Mr. Williams' actions, that he told Mr. Taylor what to do, including explicitly giving Mr. returns, that he decided the distribution of the proceeds, that he decided they would be equal, and that he threatened Taylor's numerous occasions during this scheme. Mr. Shannon even concedes, both in his sentencing memorandum and in his brief, that he was a coordinator, that his role was to coordinate in this scheme, which is another word really for manage in this scheme. And so in relying on this evidence, the District Court did not clearly err in applying the leadership enhancement to Mr. Taylor's conduct, or to Mr. Shannon's conduct, excuse me. So if there are no questions, the government would ask that this court affirm the conviction and sentence of Mr. Shannon. Thank you very much, Mr. Novak. Anything further, Mr. Sachs? We're back up here sooner than you thought you might be. I'm sorry? You're back up here sooner than you thought you might be. I am, but I think the issues in the case are pretty straightforward. I don't think Mr. Novak has said anything that I haven't addressed already, but if the court has any questions, either based on my original argument or on what he raised, I'll be happy to address them. Thank you very much. Hearing none, well we want to thank you, Mr. Sachs, for your willingness to accept the case and your assistance to the court as well as your client. Thank you, Your Honor. The case is taken under advisement.